855 So.2d 137 (2003)
Richard MERKIN, M.D., Appellant,
v.
PCA HEALTH PLANS OF FLORIDA, INC., etc., et al., Appellees.
No. 3D02-1336.
District Court of Appeal of Florida, Third District.
August 13, 2003.
Rehearing Denied October 8, 2003.
*138 Holland & Knight, Daniel S. Pearson and Ilene L. Pabian, for appellant.
Young, Berman, Karpf & Gonzalez and Andrew S. Berman, for appellee.
Before SCHWARTZ, C.J., and GERSTEN and GODERICH, JJ.
GODERICH, Judge.
The third-party defendant, Richard Merkin, M.D., appeals from an order denying his motion to dismiss for lack of personal jurisdiction. We affirm.
In February 1997, Heritage Southeast Medical Group, Inc. [Heritage Southeast], a Florida corporation, entered into agreements with PCA Health Plans of Florida, Inc. and PCA Family Health Plan, Inc. [collectively referred to as "PCA"]. Pursuant to the agreements, PCA made capitation payments based on a percentage of the premium received per health plan member to Heritage Southeast. In exchange, Heritage Southeast agreed to manage, adjust, and pay medical claims for those health plan members.
*139 In June 1998, Heritage Southeast brought suit to enjoin Humana Medical Plan, Inc. [Humana], PCA's successor in interest, from drawing down on a $12 million letter of credit. In July 2001, Humana filed an "Amended Counterclaim" against Heritage Southeast and third-party defendant, Richard Merkin, M.D., the sole officer, director and shareholder of Heritage Southeast, alleging conversion and civil theft.
In its designated "Amended Counterclaim," Humana alleged that Merkin was subject to personal jurisdiction under the Florida long-arm statute, § 48.193, Fla. Stat. (1999), or alternatively, under the alter ego exception to long-arm analysis. Humana alleged that Merkin owned 100% of the shares of Heritage Southeast, that he was its key officer and director, that he had full and complete control over the corporation and its important decisions, and that he committed a tortious act outside the State that was intended to and did have consequences and caused damage within the State. Specifically, Humana alleged, "[Merkin] decidedupon being made aware that Humana mistakenly paid $22 million to his corporationthat he would not return the money to Humana in Florida, but that Humana would have to follow him from court to court around the country to try to recover the money." Further, Humana alleged that he instructed his subordinates to concoct any reason to frustrate Humana's efforts at reclaiming its money. Humana alleged that his "scheme to steal ... constitutes misconduct specifically targeted at a corporation whose principal operation is in Florida and his scheme arose out of Heritage Southeast's direct and substantial operations within the State of Florida."
Alternatively, Humana alleged that Merkin used Heritage Southeast as his alter ego by "commingling and pooling its substantial funds with his personal funds and those of other corporations he owns and controls, running the various companies as a single enterprise, and utilizing Heritage Southeast for improper purposes including theft of Humana's money." Humana also alleged that "Merkin has not maintained corporate formalities among his various corporations as is evidenced by the fact that employees who worked for Heritage Southeast were paid by Heritage Development Organization, a Nevada corporation, and Heritage Medical Systems, a California limited liability company." In support of these allegations, Humana filed the deposition testimony of Marion Davis, a regional vice-president of operations and development for Heritage Development Organization.
Merkin filed a motion to dismiss the "Amended Counterclaim" alleging lack of personal jurisdiction. In support thereof, he filed his own affidavit wherein he averred that he was a shareholder of Heritage Southeast and that he had served as its president. Merkin's affidavit stated, in pertinent part:
8. At the time Heritage Southeast was incorporated, it was not formed for the purpose of hindering or defrauding any of its then existing or potential creditors.
9. In fact, to my best knowledge and belief, Heritage Southeast maintained all of the proper corporate formalities during the time I was a shareholder and president of the corporation.
10. At no time did I commingle any of my personal funds or any of the funds of any other business with which I was associated with the funds of Heritage Southeast.
Merkin also filed the affidavit of an officer of the bank wherein he maintained his personal and corporate bank accounts. The bank officer averred that, *140 Regardless of the number of accounts opened, all of the accounts for each separate corporation are maintained only under the same tax identification number and are not commingled with any other funds under different tax identification numbers.... As for the accounts under Heritage Southeast Medical Group, all moneys were held under the tax identification number for Heritage Southeast medical and not commingled with any other moneys from any other corporation.
At the hearing, Merkin argued that he was not subject to personal jurisdiction under section 48.193(1)(b) because he did not commit a tortious act within this state as the alleged conversion or civil theft occurred in California. Further, Merkin argued that his affidavits dispelled any alter ego theory. The trial court denied Merkin's motion to dismiss without elaboration. Merkin's appeal follows.
Merkin contends that the trial court erred by denying his motion to dismiss because he is not subject to personal jurisdiction under Florida's long-arm statute, § 48.193(1)(b). Merkin argues that any alleged conversion and civil theft occurred in California where he allegedly exerted wrongful dominion and control over Humana's property. We agree.
Section 48.193(1)(b) provides long-arm jurisdiction over a non-resident who commits a tortious act within this state. "[A] tort claim `is deemed to have accrued where the last event necessary to make the defendant liable for the tort took place.' As to the tort of conversion, that act constitutes the exercise of wrongful dominion and control over the property to the detriment of the rights of its actual owner." Envases Venezolanos, S.A. v. Collazo, 559 So.2d 651, 652 (Fla. 3d DCA 1990)(quoting Tucker v. Fianson, 484 So.2d 1370, 1371 (Fla. 3d DCA), review denied, 494 So.2d 1153 (Fla.1986)) (citations omitted).
In the instant case, Humana alleged that it mistakenly wired funds into Heritage Southeast's California bank account and that Heritage Southeast and Merkin improperly retained it. Therefore, although the funds were wired from Florida, the exercise of wrongful dominion and control over the property to the detriment of its actual owner occurred in California where the funds were received and improperly retained. E.J. Sales & Serv., Inc. v. Southeast First Nat'l Bank of Miami, 415 So.2d 906 (Fla. 3d DCA 1982)(holding that causes of action for money had and received and conversion arose in Orlando when Miami bank mistakenly wired funds to company's bank account in Orlando); Envases Venezolanos, 559 So.2d at 652-53 (holding that cause of action for conversion arose in Paris when managing agent of Venezuelan corporation improperly directed a French bank to wire money to Miami bank account).
Humana argues that a nonresident does not need to be physically present in Florida to "commit a tortious act" within the state. In doing so, Humana relies on Wendt v. Horowitz, 822 So.2d 1252, 1260 (Fla. 3d DCA 2002), in which the Florida Supreme Court held:
First, in order to "commit a tortious act" in Florida, a defendant's physical presence is not required. Second, "committing a tortious act" in Florida under section 48.193(1)(b) can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida. However, the cause of action must arise from the communications.
Although we agree that this is an accurate statement of the law, we find that it is inapplicable to the facts of this case. *141 First, Merkin did not commit a tortious act in Florida. As discussed earlier, the alleged causes of action for civil theft and conversion arose in California. Next, the alleged causes of action did not arise as a result of any sort of communications made by Merkin into Florida. See Carlyle v. Palm Beach Polo Holdings, Inc., 842 So.2d 1013, 1017 (Fla. 4th DCA 2003)(holding that communication into Florida must be tortious in and of itself). Rather, the causes of action arose when Merkin exercised wrongful dominion and control over Humana's funds which were accidentally wire transferred to Merkin's bank account in California. Therefore, we find that Humana did not satisfy the requirements for personal jurisdiction under Florida's long-arm statute.
Merkin also contends that the trial court erred by denying his motion to dismiss because he is not subject to personal jurisdiction under the alter-ego theory of long-arm jurisdiction. We disagree.
The corporate veil may be pierced if the plaintiff can prove "both that the corporation is a `mere instrumentality' or alter ego of the defendant, and that the defendant engaged in `improper conduct' in the formation or use of the corporation." Bellairs v. Mohrmann, 716 So.2d 320, 323 (Fla. 2d DCA 1998) (emphasis supplied)(citing Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114, 1120-21 (Fla.1984)). In Bellairs, the Second District explained that the procedure for determining long-arm jurisdiction set forth in Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla. 1989), is universal and therefore applicable to the alter ego theory. The procedure is as follows:
[A] plaintiff must first allege a jurisdictional basis in his pleading. Then, if the defendant wishes to contest these allegations, he must file an affidavit specifically addressing the allegations. Once a defendant submits an appropriate affidavit, the plaintiff must support his allegations with an affidavit of his own. If no disputed factual issues appear on the face of the opposing affidavits, the trial court can decide the long-arm issue without holding an evidentiary hearing. However, if the opposing affidavits conflict with one another, the trial court must "hold a limited evidentiary hearing in order to determine the jurisdiction issue."
Bellairs, 716 So.2d at 323 (emphasis added) (citations omitted).
In the instant case, Humana alleged that Merkin used Heritage Southeast as his alter ego by "commingling and pooling its substantial funds with his personal funds and those of other corporations he owns and controls, running the various companies as a single enterprise, and utilizing Heritage Southeast for improper purposes including theft of Humana's money." Humana also alleged that "Merkin has not maintained corporate formalities among his various corporations as is evidenced by the fact that employees who worked for Heritage Southeast were paid by Heritage Development Organization, a Nevada corporation, and Heritage Medical Systems, a California limited liability company." In support of these allegations, Humana filed the deposition testimony of Marion Davis, a regional vice-president of operations and development for Heritage Development Organization.
Following the procedure set forth in Venetian Salami, Merkin then filed his own affidavit and that of his bank officer. These affidavits contested some of the plaintiff's jurisdictional allegations but not all. Although Merkin averred that his corporation was not formed for improper purposes, he failed to address whether it had been used for improper purposes. Further, although he generally averred that *142 Heritage Southeast had properly maintained corporate formalities and that he did not commingle any of his personal funds or those of any other corporation with those of Heritage Southeast, he did not specifically address the allegations that he ran the various companies as a single enterprise and that employees of Heritage Southeast were paid with funds from his other corporation's accounts. Further, although establishing that Merkin in fact had individual accounts for each of his corporations, the bank officer's affidavit does nothing to address whether the funds of one corporation were used for the benefit of the other corporations.
For these reasons, we find that Merkin's affidavits were insufficient to rebut Humana's jurisdictional allegations or to create disputed issues of fact. Accordingly, we affirm the trial court's denial of Merkin's motion to dismiss for lack of personal jurisdiction.
Affirmed.
GERSTEN, J., concurs.
SCHWARTZ, Chief Judge (dissenting).
I do not agree with the majority that Humana made even a prima facie case that Merkin used any of the affiliated corporations for improper purposes so as to justify piercing the corporate veil at all. See e.g. Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114 (Fla.1984); Moran v. Schurger, 849 So.2d 1184 (Fla. 3d DCA 2003); Mason v. E. Speer & Associates, Inc., 846 So.2d 529 (Fla. 4th DCA 2003). Much less was it demonstrated that the alleged improper conduct subjected him to Florida jurisdiction by substituted service. Because I do agree that the alleged conversion did not occur in this state under section 48.193(1)(b), Florida Statutes (1999), I believe that there remains no valid basis to support the order below.