DAMOORGIAN, J.
Appellant, Ellen Russo, appeals a non-final order granting Marilyn Fink’s motion to dismiss for lack of personal jurisdiction. We affirm.
By way of background, Russo, a Florida resident, filed a complaint against Leonard Fink and Marilyn Fink, residents of Nevada. The complaint set forth counts for conversion, civil theft pursuant to section 772.11, Florida Statutes, breach of fiduciary duty, and civil conspiracy against the Finks. The count for breach of fiduciary duty was against Leonard Fink alone, whereas the other counts were against Leonard and Marilyn Fink. As a basis for these counts, it alleged that Russo and her brother, Leonard, opened and maintained two joint accounts in Broward County, Florida, which were funded by monies received as a gift from their father Irving Fink. The siblings were to use the money for the benefit of their father for the remainder of his life, and were to distribute the remainder to themselves equally upon his death. The complaint then alleged that Leonard Fink closed the Florida ac *817 counts and took the proceeds without the permission or knowledge of Ellen Russo or their father. It further alleged that Leonard’s wife, Marilyn, was aware of Leonard’s actions and encouraged him to obtain the funds. Upon Irving’s death, Russo made several verbal demands on Leonard for her equal share of the sum on deposit, as well as a written demand upon both Leonard and Marilyn.
In response to the complaint, Marilyn Fink filed a motion to dismiss for lack of personal jurisdiction. The gravamen of the motion was that the complaint failed to demonstrate minimum contacts with the State of Florida to enable jurisdiction over her, or allege that she committed any of the activities described in Florida’s long arm statute — section 48.193, Florida Statutes (2010). The motion was supported by an affidavit in which Marilyn Fink stated, in relevant part, that: (1) she had no knowledge of or involvement with the withdrawal of the funds in question or their use thereafter; (2) she had no business contacts with Florida during the relevant period in time; and (3) she denied committing any tortious act in Florida, specifically the alleged conversion, civil theft, and civil conspiracy.
Russo responded by submitting a memorandum of law in opposition to the motion and corresponding counter-affidavit, asserting that Marilyn Fink was subject to the court’s jurisdiction by way of her commission of the torts of conversion, civil theft, and civil conspiracy, causing injury to Russo in Florida. It explained that the amounts withdrawn by Leonard were deposited into an account jointly owned by Marilyn and Leonard Fink.
The trial court allowed limited discovery to be conducted on the issue of personal jurisdiction before ruling on the motion. After a hearing and the submission of additional memoranda by the parties to support their respective positions, the trial court entered an order granting Marilyn Fink’s motion to dismiss. Although the trial court determined that the complaint alleged sufficient facts to bring the action within Florida’s long-arm statute, it dismissed the complaint against Marilyn Fink because her contacts with Florida were insufficient to satisfy constitutional due process requirements. While we agree with the trial court’s conclusion, we hold that the basis for the dismissal was incorrect. Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999) (“[I]f a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record.”).
We review a trial court’s ruling on a motion to dismiss for lack of personal jurisdiction de novo. Wendt v. Horowitz, 822 So.2d 1252, 1256 (Fla.2002).
Russo raises two issues on appeal relating to the second-prong of a personal jurisdiction analysis.[1] However, we need not reach these two issues because we conclude the dismissal was proper under the first-prong of a personal jurisdiction analysis, i.e. the complaint failed to allege sufficient facts to bring the action within Florida’s long-arm statute.
In Joseph v. Chanin, 869 So.2d 738 (Fla. 4th DCA 2004), this Court recognized that:
Florida has established a two-prong test for determining jurisdiction over the *818 person. Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla.1989). The court must first determine whether the plaintiff alleged sufficient facts to comply with Florida’s long-arm statute, section 48.193, Florida Statutes (2001). Next, the court must determine if the defendant had sufficient minimum contacts with the State of Florida to satisfy due process.
Id. at 740. “Both parts must be satisfied for a court to exercise personal jurisdiction over a non-resident defendant.” Am. Fin. Trading Corp. v. Bauer, 828 So.2d 1071, 1074 (Fla. 4th DCA 2002).
Florida’s long-arm statute addresses both specific and general jurisdiction, granting specific jurisdiction over any person who commits a number of acts, including “[cjomitting a tortious act within this state.” § 48.193(l)(b), Fla. Stat. (2010). “[A] tort claim is deemed to have accrued where the last event necessary to make the defendant liable for the tort took place.” Merkin v. PCA Health Plans of Fla., Inc., 855 So.2d 137, 140 (Fla. 3d DCA 2003) (quoting Envases Venezolanos, S.A. v. Collazo, 559 So.2d 651, 652 (Fla. 3d DCA 1990)). Alternatively, in order for a court to have general jurisdiction over a defendant pursuant to section 48.193(2), Florida Statutes (2010), the defendant’s activity within Florida must be “substantial and not isolated activity,” which has been defined as “continuous and systematic.” See Woods v. Nova Cos. Belize Ltd., 739 So.2d 617, 620 (Fla. 4th DCA 1999)
With respect to the conversion, civil theft, and conspiracy counts, the amended complaint is devoid of allegations that Marilyn Fink committed any act or omission within Florida or agreed to any act with Leonard. Our review of the amended complaint leads us to conclude that the allegations failed to establish that Marilyn Fink committed the requisite tortious acts in Florida. The underlying allegations are based on the unilateral actions of Leonard Fink who was solely responsible for the withdrawal of his father’s funds from the joint account he maintained with Russo in Florida. Moreover, the complaint does not allege that Marilyn Fink took part in the withdrawal of the funds or that she was present in Florida when the act occurred.
Even assuming Marilyn Fink did play a role in controlling the funds after they left Florida, the relevant act for personal jurisdiction purposes with regard to the tort of conversion is the initial wrongful deprivation. See Merkin, 855 So.2d at 140 (holding that the tort of conversion accrues where a party exercises “wrongful dominion and control over the property to the detriment of the rights of its actual owner.”); Envases Venezolanos, S.A., 559 So.2d at 652 (Fla. 3d DCA 1990) (In the context of the depletion of a bank account in one jurisdiction and its transmission to another, that “wrongful act is necessarily deemed to have taken place where the defendant effects a withdrawal.... ”). Here, that deprivation took place in Florida without Marilyn Fink’s involvement as evidenced by the factual allegations in the complaint.
Turning to the count for civil theft, the applicable statute, section 772.11(1), Florida Statutes (2010), provides, in pertinent part,
Any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1) has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney’s fees and court costs in the trial and appellate courts.
*819 Under section 812.014, the only statutory section potentially applicable to Russo’s claims, a person “commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to ... [d]eprive the other person of a right to the property or a benefit from the property” or “appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.” § 812.014(l)(a)-(b), Fla. Stat. (2010). Here, again, the complaint did not allege Marilyn Fink’s actual removal of the monies from the Florida bank account. In fact, the complaint alleges that her husband was the one who removed the funds from the joint bank account he maintained with Russo in Florida. Marilyn Fink was not named on this account.
 As for the conspiracy count, “[a] civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy.” Raimi v. Furlong, 702 So.2d 1273, 1284 (Fla. 3d DCA 1997) (citations omitted). Here, the general allegations of the complaint simply state that “[a]t all times material hereto, Marilyn Fink had knowledge of Leonard Fink’s actions in obtaining the full estate amount including Ellen Russo’s portion thereof and encouraged Leonard Fink to obtain such amount for their joint benefit.” In the conspiracy count itself, the complaint merely states that “Leonard Fink and Marilyn Fink conspired in concert with full knowledge of each other’s action[s] for the purpose of disp[ossess]ing Ellen Russo of her portion of the estate. ...” Notably, the complaint does not allege an agreement between Leonard and Marilyn, which is the gist of a conspiracy, merely that Marilyn had knowledge of what Leonard was doing. Because it never alleged that there was an agreement, it has failed to allege sufficient facts with respect to the conspiracy count.[2]
As such, Russo failed to allege sufficient facts on the conversion, civil theft, and conspiracy counts to bring Marilyn Fink within the reach of the long-arm statute. Finally, a review of the record indicates that Marilyn Fink’s activities within Florida have not been “continuous and systematic” as required to subject her to the trial court’s general jurisdiction under section 48.193(2). See Two Worlds United v. Zylstra, 46 So.3d 1175, 1178 (Fla. 2d DCA 2010); Bafitis v. Ara, 815 So.2d 702, 703 (Fla. 3d DCA 2002).
Accordingly, we affirm the dismissal. The trial court should have dismissed the amended complaint as to Marilyn Fink without prejudice. See Henderson v. Elias, 56 So.3d 86, 90 (Fla. 4th DCA 2011) (holding that dismissal of a complaint for insufficient jurisdictional allegations should be without prejudice to amend) (citing World Class Yachts, Inc. v. Murphy, 731 So.2d 798, 800 (Fla. 4th DCA 1999)).

Affirmed.

WARNER and CONNER, JJ., concur.

. Russo alleges that (i) the trial court erred in determining that Marilyn Fink did not maintain minimum contacts with Florida for the exercise of personal jurisdiction; and (ii) the trial court erred by failing to recognize Marilyn Fink's continuous and systematic ties to Florida.

. We also note that Russo did not carry her burden to demonstrate a conspiracy after the complaint's allegations were contested by Marilyn Fink’s affidavit. Russo’s affidavit in rebuttal merely reiterated the same concluso-ry allegations contained in her complaint. Cf. Ferguson v. Estate of Campana, 47 So.3d 838, 842 (Fla. 3d DCA 2010) (conclusory assertions in a defendant’s affidavit are insufficient to contest personal jurisdiction).