NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


JOSEPH E. ABDO, in his capacity as
an individual and managing member of
SOCIAL MEDIA LTD. LLC; JOSEPH M.
ABDO, in his capacity as an individual
and member of SOCIAL MEDIA LTD.
LLC; ASHLEY ABDO; SOCIAL MEDIA
LTD. LLC, a Nevada Limited Liability
Corporation; SOCIAL MEDIA, INC.
LTD; and SOCIAL MEDIA, INC.,

        Appellants,

v.

KHALIL ABDO, in his capacity as an
individual and shareholder of SOCIAL
MEDIA, INC., a Florida corporation;
NADA ABDO QUILL; and MARIE ABDO
SILVA,

        Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2D18-134

Opinion filed December 21, 2018.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Hillsborough
County; Steven Scott Stephens, Judge.

Kraig S. Weiss and Paul K. Silverberg of
Silverberg & Weiss, P.A., Weston; and
Robert E. Biasotti of Biasotti Law, St.
Petersburg, for Appellants.

Craig L. Berman of Berman Law Firm, P.A.,
St. Petersburg, for Appellees.

KHOUZAM, Judge.

In this nonfinal appeal, two nonresident entities, Social Media Ltd LLC (SMLL) and Social Media Inc. Ltd. (SMIL), challenge the trial court's order denying their motion to quash service and/or dismiss the second amended complaint based on a lack of personal jurisdiction. Because the second amended complaint fails to allege sufficient jurisdictional facts to establish Florida's personal jurisdiction over SMLL and SMIL, we reverse.

## Factual Background

This case arose over a dispute regarding the ownership of several "adult-oriented" websites and the merchant account associated with those websites. In an attempt to regain some control over the websites and the income derived therefrom, Khalil Abdo, in his capacity as an individual and shareholder of Social Media, Inc. (SMI), and two other interested parties (collectively, the Appellees/Plaintiffs) filed a second amended complaint against their brother and SMI shareholder, Joseph E. Abdo (JEA), SMLL, SMIL, and others (collectively, the Appellants/Defendants).[1] The Appellees/Plaintiffs sought both a declaratory judgment establishing ownership in the websites and damages for the wrongful transfer of the websites and merchant account to SMLL and SMIL. They alleged that JEA engaged in "self-dealing" when he transferred the websites and merchant account to SMLL and SMIL, where he and his son served in some corporate capacity. Specifically, the Appellees/Plaintiffs alleged that SMLL's "managing member" was JEA's son and SMIL's "officer, managing

---

[1]The initial complaint sought declaratory relief and was filed against JEA alone. The initial complaint did not contain any derivative claims on behalf of SMI.

member, and owner" was JEA himself. And though JEA's son was alleged to be SMLL's managing member, the Appellees/Plaintiffs asserted that SMLL was actually "the alter ego of Defendant [JEA]."

In their second amended complaint, the Appellees/Plaintiffs raised several causes of action against JEA alone, including intentional interference with royalty agreements (count II), breach of fiduciary duty (count III), fraudulent transfers (count IV), securities fraud (count VI), and corporate waste (count VII). As to SMLL and SMIL, the Appellees/Plaintiffs did not assert any individual cause of action. Rather, they attempted to allege a claim of civil theft (count V) against "[a]ll Defendants." Finally, the Appellees/Plaintiffs alleged that "venue [was] proper . . . because the acts and transactions . . . occurred within Hillsborough County, Florida." And though SMLL and SMIL were alleged to be limited liability corporations existing under the laws of Nevada and the United Kingdom, respectively, the second amended complaint did not contain any reference to Florida's long-arm statute, section 48.193, Florida Statutes (2017).

Following the filing of the second amended complaint, SMLL and SMIL moved to quash service and, alternatively, to dismiss the complaint for failing to allege sufficient jurisdictional facts to bring it within the ambit of Florida's long-arm statute as required by Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989). In response, the Appellees/Plaintiffs filed an amended memorandum opposing the motion to dismiss, arguing that personal jurisdiction over SMLL and SMIL exists because tortious conduct and fraudulent transfers occurred in Florida. On December 20, 2017, the trial court held a nonevidentiary hearing on the motion. At the hearing, the trial court orally denied the motion, finding—incorrectly—that paragraphs thirteen and fourteen of

the second amended complaint alleged that SMLL and SMIL were "residents of Hillsborough County, Florida." Indeed, those paragraphs alleged only that JEA and his son were "citizen[s] of Hillsborough County, Florida." Despite this error, the trial court still entered a written order, denying the motion to quash service and/or dismiss the complaint. This appeal ensued.

### Discussion

We review de novo a trial court's ruling on a motion to dismiss for lack of personal jurisdiction. See Wendt v. Horowitz, 822 So. 2d 1252, 1256 (Fla. 2002); Stonepeak Partners, LP v. Tall Tower Capital, LLC, 231 So. 3d 548, 552 (Fla. 2d DCA 2017). We also strictly construe the long-arm statute in favor of the nonresident defendant. Stonepeak Partners, 231 So. 3d at 552 (citing Navas v. Brand, 130 So. 3d 766, 770 (Fla. 3d DCA 2014)).

To determine whether the trial court has personal jurisdiction over a nonresident defendant, the Florida Supreme Court in Venetian Salami set forth a two-step analysis. See Stonepeak Partners, 231 So. 3d at 552. "The trial court must first determine whether the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the long-arm statute. If it does, then the trial court must determine whether sufficient minimum contacts are shown to satisfy due process requirements." Id. (citation omitted) (citing Rautenberg v. Falz, 193 So. 3d 924, 928 (Fla. 2d DCA 2016)).

Section 48.193 lists the acts that may subject a nonresident defendant to Florida's long-arm jurisdiction. See § 48.193(1)(a)(1)-(9). The Appellees/Plaintiffs rely on three of those subsections, which provide as follows:

- 4 -

(1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

2. Committing a tortious act within this state.

. . . .

7. Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

§ 48.193(1)(a)(1), (2), (7).  And finally, the Appellees/Plaintiffs rely upon the alter ego theory of long-arm jurisdiction as a limited exception to the Venetian Salami two-step inquiry.  See Bellairs v. Mohrmann, 716 So. 2d 320, 322 (Fla. 2d DCA 1998).  However, because we hold that the second amended complaint lacks sufficient allegations to establish Florida's long-arm jurisdiction over SMLL and SMIL under either section 48.193 or the alter ego theory of long-arm jurisdiction, the Appellees'/Plaintiffs' reliance is misplaced.  We will address each argument in turn.

### A.  Section 48.193(1)(a)(2): Committing Tortious Acts in Florida

The Appellees/Plaintiffs contend primarily that both SMLL and SMIL submitted themselves to the trial court's jurisdiction by committing various torts in Florida through their agent, JEA.  More specifically, they contend that SMLL and SMIL committed the torts of (1) breach of fiduciary duty, (2) aiding and abetting breach of fiduciary duty, (3) conspiracy to commit breach of fiduciary duty, and (4) civil theft.  SMLL and SMIL, however, contend that the Appellees/Plaintiffs failed to sufficiently

- 5 -

plead any of those torts in their complaint. Based on our de novo review of the second amended complaint, we agree.

At the outset, it is clear that the Appellees/Plaintiffs failed to make any specific allegations that SMLL and SMIL breached a fiduciary duty, aided and abetted such a breach, or conspired to facilitate one. While these are undoubtedly valid intentional torts that would fall under the scope of section 48.193(1)(a)(2), the Appellees/Plaintiffs simply failed to plead these claims. The closest the Appellees/Plaintiffs came to alleging that SMLL and SMIL committed such intentional torts was in count III. And there, the Appellees/Plaintiffs alleged that only JEA—not SMLL and SMIL—breached a fiduciary duty by transferring the websites and the merchant account to SMLL and SMIL. The Appellees/Plaintiffs also failed to allege with any specificity any facts that SMLL and SMIL aided and abetted or conspired with JEA to facilitate such a breach. See, e.g., Wilcox v. Stout, 637 So. 2d 335, 336 (Fla. 2d DCA 1994) ("Florida recognizes that civil conspiracies may exist as an independent tort."); Fonseca v. Taverna Imps, Inc., 212 So. 3d 431, 442 (Fla. 3d DCA 2017) ("A cause of action for aiding and abetting the breach of a fiduciary duty requires a plaintiff to establish: 1) a fiduciary duty on the part of a primary wrongdoer; 2) a breach of that fiduciary duty; 3) knowledge of the breach by the alleged aider and abettor; and 4) the aider and abettor's substantial assistance or encouragement of the wrongdoing."). Indeed, to the extent the Appellees/Plaintiffs may hint at such a conspiracy in their second amended complaint, such vague allegations are not sufficient to establish personal jurisdiction. See NHB Advisors, Inc. v. Czyzyk, 95 So. 3d 444, 448 (Fla. 4th DCA 2012) ("[A] court will decline to apply the co-conspirator theory to extend

- 6 -

jurisdiction over nonresidents if the plaintiff fails to plead with specificity any facts supporting the existence of the conspiracy and provides nothing more than vague and conclusory allegations regarding a conspiracy involving the defendants.").

As to Appellees/Plaintiffs' arguments that the trial court has jurisdiction over SMLL and SMIL based on the tort of civil theft, we also conclude that the second amended complaint's allegations were not sufficient to support the trial court's exercise of personal jurisdiction. "In order to establish an action for civil theft, the claimant must prove the statutory elements of theft, as well as criminal intent." Gersh v. Cofman, 769 So. 2d 407, 409 (Fla. 4th DCA 2000); see also Winters v. Mulholland, 33 So. 3d 54, 56 (Fla. 2d DCA 2010) (stating that "the only statutory section potentially applicable" to a claim of civil theft is the criminal theft statute). As a result, the plaintiff must allege "that the defendant (1) knowingly; (2) obtained or used, or endeavored to obtain or use, the plaintiff's property; (3) with felonious intent; (4) to deprive plaintiff of its right to or a benefit from the property or appropriate the property to the defendant's own use or to the use of a person not entitled to the use of the property." Hawthorne v. Lyons, 192 So. 3d 1279, 1280 (Fla. 1st DCA 2016) (quoting Howard v. Murray, 184 So. 3d 1155, 1168 n.24 (Fla. 1st DCA 2015)); see also Winters, 33 So. 3d at 56 (listing the same elements for the tort of civil theft).

Here, the second amended complaint did not make adequate allegations to state a cause of action for civil theft. At best, the Appellees/Plaintiffs have made nothing more than conclusory allegations, as the second amended complaint fails to allege any specific facts demonstrating how SMLL and SMIL knowingly obtained the websites and the merchant account with the requisite felonious intent. See Am.

Seafood, Inc. v. Clawson, 598 So. 2d 273, 274 (Fla. 3d DCA 1992)

("[G]eneral conclusory allegations . . . are insufficient to state a cause of action for

conversion or civil theft."). In fact, count V simply states that only JEA—not SMLL and

SMIL—had the requisite "felonious intent." And though the Appellees/Plaintiffs averred

that "[a]ll Defendants converted the Websites and Merchant Account clearly owned by

[SMI] and continue week after week to engage in theft of assets of [SMI]," such an

allegation fails to indicate (1) who actually engaged in the initial wrongful deprivation of

the property and (2) how the perpetrator(s) did so with the requisite criminal intent. See

Russo v. Fink, 87 So. 3d 815, 818 (Fla. 4th DCA 2012) ("[T]he relevant act for personal

jurisdiction purposes with regard to the tort of conversion is the initial wrongful

deprivation." (citing Merkin v. PCA Health Plans of Fla., Inc., 855 So. 2d 137, 140 (Fla.

3d DCA 2003))). As such, the second amended complaint is devoid of sufficient

allegations to state a cause of action for civil theft.

The Appellees/Plaintiffs further argue that the trial court has jurisdiction

over SMLL and SMIL for the civil theft claim based on an agency theory. However, the

Appellees/Plaintiffs not only failed to allege the elements of an agency relationship, but

they also failed to allege that JEA was acting on behalf of SMLL and SMIL at the time of

the civil theft. See Graham v. Lloyd's Underwriters at London, 964 So. 2d 269, 275 (Fla.

2d DCA 2007) ("In order to establish the existence of an agency relationship,

three elements are necessary: (1) acknowledgement by the principal that the agent will

act on his or her behalf, (2) acceptance by the agent, and (3) control by the principal

over the agent's actions."). It is not enough to simply argue on appeal that because

JEA's son was the "managing member" of SMLL and JEA was "the officer, managing

member, and owner" of SMIL, JEA was therefore acting within the scope of his representative capacity at the time of the civil theft. Indeed, the second amended complaint was devoid of any allegations to indicate that SMLL and SMIL controlled the actions of the purported agent, JEA. Accordingly, we conclude that the second amended complaint does not contain sufficient factual allegations for the trial court to exercise its long-arm jurisdiction over SMLL and SMIL under section 48.193(1)(a)(2).

**B. Section 48.193(1)(a)(1): Maintaining an Office in Florida**

The Appellees/Plaintiffs next contend that SMLL submitted itself to the jurisdiction of Florida courts by "having an office" in Florida.[2] See § 48.193(1)(a)(1). The Appellees/Plaintiffs argue that the second amended complaint establishes that SMLL maintained an office in Florida because SMLL's 2013 tax return, which was attached to the complaint as an exhibit, listed its "partnership address" as being located in Tampa. We disagree.

As stated earlier, Florida's long-arm statute grants jurisdiction "for any cause of action arising from . . . [o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Id. To sufficiently bring an action within the ambit of section 48.193(1)(a)(1), it appears necessary to plead either that a nonresident entity has an office in Florida or, at a minimum, a "de facto office" in Florida. See, e.g., Golant v. German Shepherd Dog Club of Am., Inc., 26 So. 3d 60, 63 (Fla. 4th DCA 2010) (holding that even though a not-for-profit corporation did not maintain a physical office in the United States but operated

_____

[2]The Appellees/Plaintiffs argue that only SMLL, not SMIL, had an office in Florida. As such, this purported basis for jurisdiction is applicable to SMLL alone.

almost exclusively from the homes of its board members, the complaint's allegation that the corporation had a "de facto office" in the home of one of its board members was sufficient to satisfy the first prong of the <u>Venetian Salami</u> inquiry and bring the plaintiff's action within ambit of section 48.193(1)(a)(1)); <u>Premier Hotel Corp. v. M Grp. Resorts, S.A.</u>, 753 So. 2d 647, 647-48 (Fla. 3d DCA 2000) (holding that the basis for jurisdiction was sufficiently shown under section 48.193(1)(a) because (1) the nonresident corporation had an office in Florida as shown by the corporate president's letterhead and business cards and (2) the corporation conceded to performing some services in Florida on the contract at issue). The First District has also noted that a nonresident entity's Florida post office box is not the equivalent of maintaining a business office under the long-arm statute. <u>See</u> <u>City Contract Bus Serv., Inc. v. Woody</u>, 515 So. 2d 1354, 1357 (Fla. 1st DCA 1987).

In this case, it is clear that the second amended complaint failed to allege any facts showing that SMLL had an office in Florida. And though we are "obliged to treat as true all of the [second] amended complaint's well-pleaded allegations, including those that incorporate attachments," <u>Rudloe v. Karl</u>, 899 So. 2d 1161, 1164 (Fla. 1st DCA 2005), the second amended complaint itself contains no well-pleaded allegations that would allow us to verify from the attachments that SMLL had an actual or de facto business office in Florida. Indeed, similar to the post office box in <u>Woody</u>, SMLL's 2013 tax return reflects only that the "partnership address" was located in Tampa, Florida, not that it was conducting any business or had an office at that location. <u>See</u> 515 So. 2d at 1357. Thus, because we must strictly construe the long-arm statute in favor of the nonresident defendant, we conclude that the second amended complaint failed to allege

sufficient facts to subject SMLL to the trial court's jurisdiction in Florida under section 48.193(1)(a)(1).

### C. Section 48.193(1)(a)(7): Breach of Contract

The next issue is whether the second amended complaint contains sufficient allegations to allow the trial court to exercise its jurisdiction over SMLL based on a breach of contract theory. See § 48.193(1)(a)(7) ("A person . . . submits himself . . . to the jurisdiction of the courts of this state for any cause of action arising from . . . [b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state."). The Appellees/Plaintiffs contend on appeal that because "SMLL obligated itself to pay royalties to Plaintiff Khalil Abdo in the forum state" and failed to make such payments, SMLL is subject to the trial court's personal jurisdiction based on a breach of contract.

While it is certainly true that a breach of contract by a nonresident corporation may subject it to Florida's jurisdiction, the Appellees/Plaintiffs simply failed to allege a breach of contract in the second amended complaint. See Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. 2d DCA 2006) ("The elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach."). A review of the amended complaint reflects that only count II, which is entitled "Intentional Interference with Royalty Agreements," could possibly be construed as a breach of contract claim. There, however, it merely states that JEA "interfere[d] with Plaintiffs' receipt of royalty payments due to Plaintiffs beyond the February 2012 formation of Social Media, Inc. without cause or justification." There are no other factual allegations that could establish that SMLL breached a

- 11 -

contract.  Accordingly, the Appellees/Plaintiffs failed to allege sufficient jurisdictional facts to subject SMLL to the exercise of the trial court's jurisdiction under section 48.193(1)(a)(7).

### D.  The Exception to the <u>Venetian Salami</u> Inquiry: Jurisdiction under the Alter Ego Theory

The final issue is whether the trial court has jurisdiction over SMLL and SMIL based on an alter ego theory of long-arm jurisdiction.  The Appellees/Plaintiffs argue on appeal that SMLL and SMIL are the alter egos of JEA.  SMLL and SMIL, however, contend that because the Appellees/Plaintiffs failed to sufficiently plead an alter ego theory of jurisdiction, the trial court erred in denying their motion to dismiss.  We agree.

"The alter ego theory of long-arm jurisdiction exists as a limited exception to the general, two-step process for establishing long-arm jurisdiction as set forth in [Venetian Salami]."  <u>Bellairs</u>, 716 So. 2d at 322.  "To demonstrate jurisdiction under an alter ego theory, the plaintiff must make sufficient jurisdictional allegations to pierce the corporate veil."  <u>Stonepeak Partners</u>, 231 So. 3d at 556 (citing <u>WH Smith, PLC v. Benages & Assocs.</u>, 51 So. 3d 577, 581 (Fla. 3d DCA 2010)).  Piercing the corporate veil requires the plaintiff to "establish '<u>both</u> that the corporation is a "mere instrumentality" or alter ego of the defendant[] <u>and</u> that the defendant engaged in "improper conduct" in the formation or use of the corporation.' "  <u>Id.</u> (alteration in original) (emphasis in original) (quoting <u>Bellairs</u>, 716 So. 2d at 323).  To show that a corporation is the "mere instrumentality" or alter ego of another person, the plaintiff must plead and ultimately "prove that 'the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact

- 12 -

nonexistent and the shareholders were in fact alter egos of the corporation.' " WH

Smith, 51 So. 3d at 582 (quoting Gasparini v. Pordomingo, 972 So. 2d 1053, 1055 (Fla.

3d DCA 2008)).

This court's decision in Bellairs is instructive as to whether the second

amended complaint at issue satisfies those pleading requirements.  In Bellairs, the trial

court dismissed an amended third-party complaint against the nonresident principals of

a radio broadcasting company (Miracle) that was doing business in Florida.  716 So. 2d

at 321.  Raising multiple causes of action in tort, including fraud, conversion, and

interference with business relationship, the third-party plaintiffs alleged that the

nonresident principals of Miracle were individually liable for the activities they conducted

in Florida under its corporate "guise."  Id. at 322-23.  The third-party plaintiffs alleged as

follows:

> "Miracle was a hollow shell with no ability to meet the
> obligations of the agreement," and . . . "Miracle never had
> any existence separate and distinct from its 'shareholders.' "
> The amended third-party complaint also alleged that the
> Miracle Principals "failed to observe corporate formalities . . .
> [and] did not recognize the existence of Miracle as a
> corporation in their own dealings."  The amended third-party
> complaint further alleged that "Miracle is a mere
> instrumentality of its shareholders and the Miracle entity was
> used for improper conduct."

Id. at 323 (alteration in original) (quoting amended third-party complaint).  Upon

conducting a de novo review of the amended complaint, this court held that the trial

court erred in dismissing the amended third-party complaint.  Id.  This court reasoned

that the complaint's allegations "constitute[d] a prima facie case for jurisdiction because

they allege[d] both that the resident corporation was a mere instrumentality of its

shareholders[] and that the corporation was used for improper conduct."  Id.  As such,

this court reversed and remanded for the trial court to hold a limited evidentiary hearing to resolve the jurisdiction issue as there were competing affidavits filed by the Miracle principals and the third-party plaintiffs.  Id.

Here, unlike in Bellairs, we find that the second amended complaint did not plead sufficient facts to establish jurisdiction over SMLL and SMIL based on an alter ego theory.  Although the second amended complaint documents JEA's improper conduct, including breach of fiduciary duty, fraudulent transfers, and intentional interference with a business relationship, the second amended complaint fails to allege how SMLL and SMIL were the mere instrumentalities of JEA.  That is, aside from stating that JEA and his son were the managing members of both SMLL and SMIL, there are no allegations establishing how JEA "dominated and controlled [SMLL and SMIL] to such an extent that the corporation's independent existence, was in fact nonexistent and the shareholders were in fact alter egos of the corporation."  See WH Smith, 51 So. 3d at 582; see also Sykes, 450 So. 2d at 1120 ("The mere fact that one or two individuals own and control the stock structure of a corporation does not lead inevitably to the conclusion that the corporate entity is a fraud or that it is necessarily the alter ego of its stockholders to the extent that the debts of the corporation should be imposed upon them personally." (quoting Advertects, Inc. v. Sawyer Indus., Inc., 84 So. 2d 21, 22-23 (Fla. 1955))).  Nor are there any factual allegations establishing how the identities of either SMLL or SMIL were not lawfully maintained.  See Houri v. Boaziz, 196 So. 3d 383, 390 (Fla. 3d DCA 2016) ("The law is clear that the mere ownership of a corporation by a few shareholders, or even one shareholder, is an insufficient reason to pierce the corporate veil.  '[E]ven if a corporation is merely an alter ego of its dominant shareholder

- 14 -

or shareholders, the corporate veil cannot be pierced so long as the corporation's separate identity was lawfully maintained.' " (alteration in original) (quoting Gasparini, 972 So. 2d at 1055)).  And though the second amended complaint posited that SMLL was "the alter ego of" JEA, such a conclusory allegation is insufficient to support the exercise of personal jurisdiction under an alter ego theory.  See Raymond, James & Assocs., Inc. v. Zumstorchen Inv., Ltd., 488 So. 2d 843, 846 (Fla. 2d DCA 1986) (noting that a lone allegation expressing that certain individuals "were alter egos of [a] corporation . . . would be insufficient" to establish a breach of contract claim against those individuals based on an alter ego theory); cf. Bellairs, 716 So. 2d at 323 (illustrating the factual allegations necessary to constitute a prima facie case of jurisdiction based on the alter ego theory).  Accordingly, we conclude that the trial court did not have jurisdiction over SMLL and SMIL based on an alter ego theory of long-arm jurisdiction.

## Conclusion

Because the Appellees/Plaintiffs failed to sufficiently allege a basis for jurisdiction under either section 48.193 or the alter ego theory, we reverse the trial court's order denying the motion to dismiss the second amended complaint and remand for further proceedings.[3]

Reversed and remanded.

SALARIO and BADALAMENTI, JJ., Concur.

---

[3]Based on this conclusion, we do not reach the issue of whether SMLL and SMIL had sufficient minimum contacts with Florida.  See Stonepeak, 231 So. 3d at 558.

- 15 -