NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

| | |
|---|---|
| K. MITCHELL WIGGINS, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) Case No: 2D13-4033 |
| | ) |
| TIGRENT, INC., f/k/a Whitney Information | ) |
| Network, Inc., a Colorado corporation, | ) |
| | ) |
| Appellee. | ) |
| | ) |

Opinion filed July 30, 2014.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Lee County;
Keith Kyle, Judge.

Victor Kline and Dariel Abrahamy of
Greenspoon Marder, P.A., Orlando, for
Appellant.

Daniel J. DeLeo and Michael J. Labbee of
Shumaker, Loop & Kendrick, LLP,
Sarasota, for Appellee.


WALLACE, Judge.

K. Mitchell Wiggins appeals the circuit court's order denying his motion to

vacate the final judgment entered against him in favor of Tigrent, Inc., f/k/a Whitney

Information Network, Inc., a Colorado corporation (Tigrent). Mr. Wiggins also asked the

circuit court to dismiss the action as to him. Because the circuit court lacked personal

jurisdiction over Mr. Wiggins, the judgment against Mr. Wiggins was void. Accordingly, the circuit court erred in denying Mr. Wiggins' motion to vacate the judgment in accordance with Florida Rule of Civil Procedure 1.540(b)(4).

## I. THE FACTS AND PROCEDURAL HISTORY

Tigrent is a Colorado corporation with its headquarters in Cape Coral, Florida. Western Clearing Corp., a Nevada limited liability company (WCC), has its offices in the State of Washington, which is where Mr. Wiggins lived and worked. In 2003, Tigrent and WCC entered into a written contract whereby WCC agreed to process electronic payments made by Tigrent's customers and to transfer the funds to Tigrent's bank accounts in Florida on a regular basis. The parties' dispute arose in March 2011, when WCC allegedly failed to forward approximately $356,000 in funds belonging to Tigrent.

In July 2011, Tigrent filed a complaint against WCC and Mr. Wiggins, who it identified as "an individual manager" of WCC. In its complaint, Tigrent alleged five claims for relief: count I, breach of contract; count II, unjust enrichment; count III, breach of the implied covenant of good faith and fair dealing; count IV, breach of fiduciary duty; and count V, conversion. The complaint's first four counts named only WCC as a defendant; the fifth count for conversion named both WCC and Mr. Wiggins. In its claim for conversion, Tigrent alleged that Mr. Wiggins had withheld Tigrent's funds and had "utilized those funds to offset a separate corporate liability of WCC."

Mr. Wiggins was served with the summons and a copy of the complaint in the State of Washington on July 15, 2011. However, neither he nor WCC filed an appearance in the action or otherwise responded to the complaint, and they were

- 2 -

defaulted. On November 14, 2011, the circuit court entered a final judgment against WCC and Mr. Wiggins, jointly and severally, for $368,169.99. The circuit court also reserved jurisdiction to enter an award of attorney's fees.

In March 2013, approximately fifteen months later, Mr. Wiggins filed a motion to vacate the final judgment against him in accordance with Florida Rule of Civil Procedure 1.540(b).[1] In support of his motion, Mr. Wiggins alleged that the circuit court did not have personal jurisdiction over him and, for that reason, the judgment was void as to him and must be vacated. Mr. Wiggins also requested that he be dismissed from the action. In response, Tigrent argued that the circuit court had properly exercised personal jurisdiction over Mr. Wiggins and, in any event, Mr. Wiggins "no longer ha[d] standing to raise his jurisdictional defense after the expiration of the one-year window provided by Florida Rule of Civil Procedure 1.540(b)."

## II. THE CIRCUIT COURT'S RULING

Although the circuit court did not explain its reasoning in the order denying Mr. Wiggins' motion, we have the benefit of a transcript of the motion hearing. In the hearing, the circuit judge made several statements that provide insight into the rationale for his ruling. Addressing Mr. Wiggins' attorney, the circuit judge said:

> Certainly if, let's just say your client [Mr. Wiggins] dilly-dallied for whatever reason and had some excusable neglect, and then with all due diligence has meritorious defenses, files a proposed answer, motion to dismiss, et cetera, I don't think he's [opposing counsel] saying that your client necessarily is precluded from getting the judgment set aside and potentially challenging jurisdiction.

---

[1]WCC did not move to vacate the judgment against it.

But you've not provided the Court here today any type of issue relative to his failure to respond or anything of that sort.

You've basically jumped straight to the chase saying, here's my factual assertion that I don't have any connections or ties to Florida, ergo not withstanding my default to the factual allegations, we should set aside the judgment and throw everything out.

Later, the circuit judge commented:

How do we get over the allegations, though, that they've alleged that it's personal jurisdiction, your client was duly served and then failed to contest that prior to entry into A, the default, and then B, the final default judgment[?]

My question is, what would preclude as he's argued any defendant in any case to come in 19 years later and say, I defaulted to those allegations. But you know what, here's my affidavit. I had no connections nor had any to the State [and undo] it all 19 years after the fact?

After both parties had completed their arguments on the motion, the circuit judge announced his ruling as follows:

In review of the Complaint there do appear to be two factual assertions or allegations to claim personal jurisdiction, and there was proper service, and that was not disputed, nor was otherwise admitted here . . . today.

Having considered the relative arguments presented by the parties as well as the respective motions, the memorandums in opposition as well as the affidavits, I do find that Tigrent's position is well taken.

After the hearing, the circuit court entered an order denying Mr. Wiggins' motion. This appeal followed.

### III.  FRAMING THE ISSUES

The circuit judge's comments and conclusions help us to frame the issues before us into two distinct questions.  First, did the circuit court have long-arm

- 4 -

jurisdiction over Mr. Wiggins under section 48.193, Florida Statutes (2011)?  Second, did Mr. Wiggins waive his right to object to personal jurisdiction by failing to raise the issue until after the circuit court entered a default judgment against him?  Because a conclusion that a waiver occurred would make it unnecessary to reach the issue of personal jurisdiction, we will consider the issue of waiver first.

## IV.  THE STANDARD OF REVIEW

The issue of whether Mr. Wiggins waived his right to object to personal jurisdiction by failing to raise the issue until after the entry of a default judgment is a question of law that we review de novo.  See Kaaa v. Kaaa, 58 So. 3d 867, 869 (Fla. 2010) (as revised on denial of rehearing).  The de novo standard of review also applies to the review of an order determining whether a final judgment by default is void for lack of personal jurisdiction over the defendant.  See Wendt v. Horowitz, 822 So. 2d 1252, 1256 (Fla. 2002); Schwartzberg v. Knobloch, 98 So. 3d 173, 180 (Fla. 2d DCA 2012), review denied, 116 So. 3d 383 (Fla. 2013); Infante v. Vantage Plus Corp., 27 So. 3d 678, 680 (Fla. 3d DCA 2009).

## V.  DISCUSSION

### A. Waiver

The first question that we are called upon to decide is whether a nonresident defendant, who has been properly served with process, may ignore the proceeding until after a default judgment is entered and then move to vacate the judgment as void based on a lack of personal jurisdiction.  Stated differently, the question is whether a nonresident defendant, who has been properly served, waives the

- 5 -

defense of lack of personal jurisdiction by failing to raise the issue in a timely responsive pleading.

Tigrent argues that because Mr. Wiggins failed to respond timely to the complaint and essentially ignored the proceedings until after the circuit court entered a default judgment against him, he waived his right "to object to the trial court's personal jurisdiction over him nearly two years later." Mr. Wiggins responds that his failure to respond timely to the complaint does not result in a waiver. According to Mr. Wiggins, as long as his "first step" in the case was to challenge the circuit court's personal jurisdiction over him—even though he took that first step after the entry of the default judgment—he could still properly raise the issue of personal jurisdiction.

Before analyzing the parties' arguments, it will be helpful to review a few basic principles regarding the difference between void and voidable judgments and the effect of the entry of a judgment by a court that lacked personal jurisdiction of the defendant. This court has previously described the difference between a judgment that is "void" and one that is "voidable" as follows:

> A void judgment is so defective that it is deemed never to have had legal force and effect. In contrast, a voidable judgment is a judgment that has been entered based upon some error in procedure that allows a party to have the judgment vacated, but the judgment has legal force and effect unless and until it is vacated.

Sterling Factors Corp. v. U.S. Bank Nat'l Ass'n, 968 So. 2d 658, 665 (Fla. 2d DCA 2007) (citations omitted). A judgment that is entered against a defendant over whom the court lacks personal jurisdiction is a void judgment. Id. There is no time limitation on setting aside a void judgment. Johnson v. State, Dep't of Revenue, ex rel. Lamontagne, 973 So. 2d 1236, 1238 (Fla. 1st DCA 2008). On the contrary, a void judgment may be

collaterally attacked at any time. <u>Gibson v. Progress Bank of Fla.</u>, 54 So. 3d 1058, 1061 (Fla. 2d DCA 2011)**;** <u>Rodriguez-Faro v. M. Escarda Contractor, Inc.</u>, 69 So. 3d 1097, 1098 (Fla. 3d DCA 2011). A decision whether or not to vacate a void judgment is not within the ambit of a trial court's discretion; if a judgment previously entered is void, the trial court must vacate the judgment. <u>Horton v. Rodriguez Espaillat y Asociados</u>, 926 So. 2d 436, 437 (Fla. 3d DCA 2006) (quoting <u>Dep't of Transp. v. Bailey</u>, 603 So. 2d 1384, 1386-87 (Fla. 1st DCA 1992)).

Tigrent bases its argument that Mr. Wiggins waived the defense of lack of personal jurisdiction on the pertinent provisions of Florida Rule of Civil Procedure 1.140 concerning "Defenses." The Rule states, in pertinent part, as follows:

> **(a) When Presented.**
>
> (1) Unless a different time is prescribed in a statute of Florida, a defendant shall serve an answer within 20 days after service of original process and the initial pleading on the defendant, or not later than the date fixed in a notice by publication.
>
> . . . .
>
> **(b) How Presented.** Every defense in law or fact to a claim for relief in a pleading shall be asserted in the responsive pleading, if one is required, but the following defenses may be made by motion at the option of the pleader: (1) lack of jurisdiction over the subject matter, (2) <u>lack of jurisdiction over the person</u>, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a cause of action, and (7) failure to join indispensable parties. A motion making any of these defenses shall be made before pleading if a further pleading is permitted.
>
> . . . .
>
> **(h) Waiver of Defenses.**

(1) A party waives all defenses and objections that the party does not present either by motion under subdivisions (b), (e), or (f) of this rule or, if the party has made no motion, in a responsive pleading except as provided in subdivision (h)(2).

(2) The defenses of failure to state a cause of action or a legal defense or to join an indispensable party may be raised by motion for judgment on the pleadings or at the trial on the merits in addition to being raised either in a motion under subdivision (b) or in the answer or reply. The defense of lack of jurisdiction of the subject matter may be raised at any time.

(Emphasis added.)

Rule 1.540(b) is the other provision of the civil rules that is relevant to our consideration of this matter. The rule provides, in pertinent part, as follows:

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, decree, order, or proceeding for the following reasons: . . . (4) that the judgment or decree is void. . . . The motion shall be filed within a reasonable time, and for reasons (1), (2), and (3) not more than 1 year after the judgment, decree, order, or proceeding was entered or taken.

Notably, the one-year limitation in the rule on the time for filing the motion does not apply to instances where the judgment sought to be vacated is void.

The parties have not cited, and our independent research has not disclosed, any Florida appellate decision directly addressing the specific question of waiver by failure to appear or respond presented here. However, we note that rules 12 and 60 of the Federal Rules of Civil Procedure are substantially similar to the corresponding provisions of rules 1.140 and 1.540 of the Florida Rules of Civil Procedure, respectively. Accordingly, we look to federal decisions for assistance in

analyzing the question that we are called upon to resolve. "Because the Florida Rules of Civil Procedure are modeled after the Federal Rules of Civil Procedure, federal decisions are highly persuasive in ascertaining the intent and operative effect of various provisions of the rules." Wilson v. Clark, 414 So. 2d 526, 531 (Fla. 1st DCA 1982).

In "R" Best Produce, Inc. v. DiSapio, 540 F.3d 115, 123 (2d Cir. 2008), the Second Circuit said, "[I]t is . . . well settled that voidness of a judgment for lack of personal jurisdiction can be asserted on a collateral challenge after entry of a default judgment." The Second Circuit explained:

> It might seem anomalous that an appearing party is deemed to waive lack of personal jurisdiction by not properly asserting it in a timely motion or pleading, but a non-appearing party with notice may suffer a default judgment and later seek relief under Rule 60(b)(4). Apart from juridical fixation on the concept of voidness, the unstated rationale for the distinction is very likely that a non-appearing defendant, even with notice, should be spared the burden of defending in a distant forum and a plaintiff should be careful to join only those defendants as to whom personal jurisdiction can successfully be established in the original action.

Id. In its review of a district court's order denying a motion to vacate a final judgment, the Sixth Circuit held that the district court erred in concluding that a defendant waived its defense of lack of personal jurisdiction by failing to raise the issue until after a default judgment had been entered. Reynolds v. Int'l Amateur Athletic Fed'n, 23 F.3d 1110, 1120-21 (6th Cir. 1994). Closer to home, the Eleventh Circuit has said:

> Rule 60(b)(4) allows a litigant—even one who does not initially appear—to collaterally attack a judgment on the ground that it is void due to lack of personal jurisdiction. See, e.g., Hazen Research, Inc. v. Omega Minerals, Inc., 497 F.2d 151, 154 (5th Cir. 1974). This is because "[a]n in personam judgment entered without personal jurisdiction over a defendant is void at to that defendant." Combs v. Nick Garin Trucking, 825 F.2d 437, 442 (D.C. Cir. 1987).

Sloss Indus. Corp. v. Eurisol, 488 F.3d 922, 924 (11th Cir. 2007). The Sloss court was careful to note in its opinion that the defendant in that case had been "served with process [and] did not timely appear or respond to [the plaintiff's] complaint." Id. Thus the facts in Sloss are indistinguishable from the facts in this case. See also Harper Macleod Solicitors v. Keaty & Keaty, 260 F.3d 389, 393 (5th Cir. 2001) ("It is well-established that defendants need not appear in a federal court without authority to exercise personal jurisdiction over them to raise a jurisdictional defect. Defendants are 'always free to ignore . . . judicial proceedings, risk a default judgment, [and] then challenge the judgment on jurisdictional grounds in a collateral proceeding.' " (quoting Ins. Corp. of Ir., v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 706 (1982))); Hugel v. McNell, 886 F.2d 1, 3 n.3 (1st Cir. 1989) (holding that the defendants did not waive the defense of lack of personal jurisdiction by failure to raise it in responsive pleading where the defendants first raised the issue of lack of personal jurisdiction in a motion to vacate a judgment); Williams v. Life Sav. & Loan, 802 F.2d 1200, 1202 (10th Cir. 1986) ("Defects in personal jurisdiction . . . are not waived by default when a party fails to appear or respond."). Undoubtedly, the weight of federal authority supports Mr. Wiggins' position on the waiver issue. See generally 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Civil § 1391 (3d ed. 2014) (discussing the waiver of certain defenses under Federal Rule of Civil Procedure 12(h)(1)).

Our independent research has located only a few state cases on point, but these cases also support Mr. Wiggins' position on the waiver issue. In Crouch v. Crouch, 641 S.W.2d 86, 90 (Mo. 1982) (en banc), the Supreme Court of Missouri said:

Absent contacts with Missouri that satisfy the long-arm provision of Rule 54.06(b), the due process limitations on state power to assert jurisdiction over nonresident defendants, see World-Wide Volkswagen [v. Woodson, 444 U.S. 286, 291-94 (1980)], compel the conclusion that a defendant over whom the trial court could not otherwise constitutionally acquire jurisdiction does not waive the jurisdictional defense merely by his nonappearance. Two fundamental precepts must be borne in mind. First, a personal judgment rendered by a court without personal jurisdiction over the defendant is void and may be attacked collaterally. Ray v. Ray, 330 Mo. 530, 536, 50 S.W.2d 142, 143 (1932); Adams v. Cowles, 95 Mo. 501, 507, 8 S.W. 711, 714 (1888). See Gaffney v. Gaffney, 528 S.W.2d 738, 742 [(Mo. 1975) (en banc)]. Second, a defendant "is always free to ignore the judicial proceedings, risk a default judgment and then challenge that judgment on jurisdictional grounds in a collateral proceeding." Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 102 S.Ct. 2099, 2106, 73 L. Ed. 2d --- (1982).

See also Architectural Woodcraft Co. v. Read, 464 A.2d 210, 212 (Me. 1983) ("Where . . . a defendant has not appeared in an action and where due process issues are generated by the exercise of personal jurisdiction over him, the defense of lack of personal jurisdiction is not waived."); I.S.H. v. M.D.B., 987 N.E.2d 223, 229-30 (Mass. App. Ct. 2013) (holding that a father's failure to appear before the entry of a paternity judgment did not waive the defense of lack of personal jurisdiction).

In this case, Mr. Wiggins does not deny that he was properly served with process. Undeniably, he "sat on his rights" for more than a year instead of filing a timely motion challenging the circuit court's personal jurisdiction.[2] But Mr. Wiggins has made a

---

[2]Mr. Wiggins took a risk by waiting to raise his challenge to personal jurisdiction in Florida for more than one year. If he lost the collateral attack on jurisdictional grounds, then he would have been unable to contest the default judgment on the merits. Arguably, it would be more prudent for a defendant similarly situated to timely raise his or her challenge to personal jurisdiction in the court where the action is pending so that he or she could defend the case on the merits in the event of an

- 11 -

challenge to the very validity of the judgment. Due process requires that the circuit court must have first acquired jurisdiction of Mr. Wiggins before it could contemplate entering an in personam judgment against him. Based on the authorities discussed above, we conclude that Mr. Wiggins did not waive the right to challenge the default judgment by failing to challenge the circuit court's jurisdiction of him for fifteen months after he was served with process.

### B. Long-Arm Statute/Personal Jurisdiction

Having determined the question of waiver in Mr. Wiggins' favor, we turn now to the question of whether the default judgment is void because the circuit court lacked personal jurisdiction over him under the long-arm statute. "Because this case arises from a motion to dismiss for lack of personal jurisdiction, we derive the facts from the affidavits in support of the motion to dismiss, and the transcripts and records submitted in opposition to the motion to dismiss." Wendt, 822 So. 2d at 1254.

### 1. Sufficiency of the complaint

The long-arm statute, section 48.193, Florida Statutes (2011), provides, in pertinent part, as follows:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

---

adverse ruling on the jurisdictional issue. Similarly, Tigrent took a risk by choosing to sue Mr. Wiggins in Florida, thereby courting the danger that it would be precluded from filing a timely action against him in Washington, where personal jurisdiction was more likely to be found. Of course, these are the kinds of strategic decisions that trial counsel are regularly called upon to make.

. . . .

(b) Committing a tortious act within this state.

. . . .

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

In determining whether it may exercise personal jurisdiction over a nonresident of Florida, a trial court, upon proper motion, must make two inquiries. " 'First, it must be determined that the complaint alleges sufficient jursidictional facts to bring the action within the ambit of the statute; and if it does, the next inquiry is whether sufficient 'minimum contacts' are demonstrated to satisfy due process requirements.' " Borden v. East-European Ins. Co., 921 So. 2d 587, 592 (Fla. 2006) (quoting Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989)). "A judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (citing Pennoyer v. Neff, 95 U.S. 714, 732-33 (1877)).

In this case, Tigrent alleged in its complaint that Mr. Wiggins had submitted to jurisdiction in Florida because he "(a) [c]ommitted a tortuous [sic] act within the State of Florida as more particularly described herein, and/or (b) [e]ngaged in substantial and not isolated activities in the State of Florida." Tigrent also alleged that Mr. Wiggins diverted funds from a specific holding account, the assets of which were the property of Tigrent, intentionally withheld those funds despite Tigrent's demands, and used those funds to offset a corporate liability of WCC. Here, Tigrent's complaint

- 13 -

alleges that Mr. Wiggins committed a tort in Florida and alleges that he engaged in substantial and not isolated activity.  Accordingly, the allegations of the complaint are sufficient to invoke the long-arm statute.

### 2.  Minimum Contacts

Florida courts may exercise personal jurisdiction of a nonresident defendant only if there are sufficient minimum contacts between the defendant and the state such that maintaining the action in Florida does not offend traditional notions of fair play and substantial justice.  See Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945).  "Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state."  Bird v. Parsons, 289 F.3d 865, 873 (6th Cir. 2002).

### a.  General Jurisdiction

A plaintiff establishes general jurisdiction by showing that the defendant engaged in substantial and not isolated activity in Florida, pursuant to section 48.193(2).  General personal jurisdiction under the long-arm statute arises when the defendant engages in substantial and not isolated activities in Florida and arises from a party's contacts in Florida that are unrelated to the litigation.  Canale v. Rubin, 20 So. 3d 463, 466 (Fla. 2d DCA 2009).  " 'Substantial and not isolated activity' is that which is 'continuous and systematic.' "  Two Worlds United v. Zylstra, 46 So. 3d 1175, 1178 (Fla. 2d DCA 2010) (quoting Bafitis v. Ara, 815 So. 2d 702, 703 (Fla. 3d DCA 2002)).  " '[I]f the defendant's activities meet the requirements of this section, the due process requirement of minimum contacts is fulfilled.' "  Schwartzberg, 98 So. 3d at 178 (quoting Camp Illahee Investors, Inc. v. Blackman, 870 So. 2d 80, 85 (Fla. 2d DCA 2003)).

In this case, Mr. Wiggins' affidavit established that he was not personally operating, conducting, engaging in, or carrying on a business venture in this state. In addition, Mr. Wiggins had not even been present in the state except for a three-day convention some years before the events at issue. Neither the complaint nor the allegations in Tigrent's counter-affidavit refute these claims. Indeed, there is nothing in the complaint, the affidavits, or the record that would suggest that Mr. Wiggins, individually, engaged in substantial and not isolated activity in Florida such that general jurisdiction under section 48.193(2) would apply. Although a general jurisdictional analysis may apply to WCC, it clearly does not as to Mr. Wiggins. Thus, in the absence of general jurisdiction, our only inquiry is whether Mr. Wiggins is subject to specific personal jurisdiction in Florida under section 48.193(1)(b).

### b. Specific Jurisdiction

That the injury must occur in Florida, although obviously a fundamental requirement of personal jurisdiction, is not, standing alone, determinative of specific personal jurisdiction under section 48.193(1)(b). "[T]he plaintiff must still establish that the nonresident defendant has sufficient minimum contacts with the State of Florida to satisfy due process of law." Schwartzberg, 98 So. 3d at 177 (citing Int'l Shoe, 326 U.S. at 316); see also Wendt, 822 So. 2d at 1257 ("[W]e distinguish the question of whether communications into Florida can constitute 'committing a tortious act' for the purposes of Florida's long-arm statute from the question of whether those acts may satisfy the minimum contacts required to comply with the constitutional prong of Venetian Salami.").

In determining whether personal jurisdiction over a nonresident defendant is proper, our due process analysis proceeds on a case-by-case basis. See Allerton v. State Dep't of Ins., 635 So. 2d 36, 40 (Fla. 1st DCA 1994) (" '[T]he facts of each case must always be weighed' in determining whether personal jurisdiction would comport with 'fair play and substantial justice.' " (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 485-86 (1985))). The specific inquiry is whether the nonresident defendant should reasonably have anticipated being haled into court in Florida. Venetian Salami, 554 So. 2d at 500.

Section 48.193(1)(b) provides that a nonresident subjects himself to the personal jurisdiction of a Florida court by "committing a tortious act within this state." Thus, in order to assert specific personal jurisdiction over a nonresident defendant, the plaintiff must allege sufficient facts to prove that the defendant committed a tortious act in Florida. However, our supreme court has held that "in order to 'commit a tortious act' in Florida, a defendant's physical presence is not required." Wendt, 822 So. 2d at 1260. Examining the cases where this rule is applied, we discover that in virtually all of them, the finding that personal jurisdiction exists against a nonresident defendant who commits a tort outside of Florida involves some sort of communication directed into Florida for the purpose of fraud, slander, or other intentional tort. For example, Wendt involved securities fraud accomplished via telephonic, electronic, or written communications into Florida. Id. at 1258. Similarly, Execu-Tech Business Systems, Inc. v. New Oji Paper Co., 752 So. 2d 582 (Fla. 2000), involved a class action against a Japanese company for price fixing with regard to its product sold widely in Florida. And in Acquadro v. Bergeron, 851 So. 2d 665 (Fla. 2003), the defendants made defamatory

statements during telephone conversations with persons in Florida that resulted in the false arrest and malicious prosecution of the plaintiffs. And most recently, in Internet Solutions Corp. v. Marshall, 39 So. 3d 1201 (Fla. 2010), defamatory statements posted on a website in Washington State subjected the poster (who was also the owner and operator of the website) to personal jurisdiction in Florida under section 48.193(1)(b).

In contrast, in Kountze v. Kountze, 996 So. 2d 246, 252 (Fla. 2d DCA 2008), the act of recording a phone call in another state during a conversation with a resident in Florida—a violation of a Florida Statute—did not constitute a tortious act committed in Florida for the purpose of long arm jurisdiction because the act did not occur in Florida and it was not illegal in the state where the recording was made. And in two cases involving claims for conversion—similar to the claim Tigrent asserted against Mr. Wiggins in this case—personal jurisdiction was *not* found based on conversion of funds that originated in Florida and were the property of a plaintiff in Florida. In both of these cases, the tort of conversion was held to have occurred in the state where wrongful dominion and control over the property occurred. See Ernie Passeos, Inc. v. O'Halloran, 855 So. 2d 106, 109 (Fla. 2d DCA 2003) (holding that an alleged conversion occurred—if at all—in Ohio, where the defendant received certain goods, and where the original transfer of the goods to Ohio from Florida was lawful at the time the goods were transferred); Merkin v. PCA Health Plans of Fla., Inc., 855 So. 2d 137, 141 (Fla. 3d DCA 2003) (holding that the plaintiff did not satisfy the requirements for personal jurisdiction for conversion under Florida's long-arm statute because the alleged tort of conversion occurred in California, where the defendant "exercised wrongful dominion and control over Humana's funds").

The critical factor in deciding whether a tort committed out of state may subject the tortfeasor to personal jurisdiction in Florida is whether the cause of action arose from the act in question. In Wendt, for example, the cause of action—securities fraud—arose from communications directed into Florida to prospective investors. This connection between the act and the forum state has been called "connexity." See Wendt, 822 So. 2d at 1260 (" '[C]ommitting a tortious act' in Florida under section 48.193(1)(b) can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida. However, the cause of action must arise from the communications. This predicate finding is necessary because of the connexity requirement contained in section 48.193(1)."). Cases involving torts such as defamation, libel, and slander are especially amenable to this analysis because such torts are generally considered to occur in the state where the tortious statements are published or directed. See Casita, L.P. v. Maplewood Equity Partners L.P., 960 So. 2d 854, 857 (Fla. 3d DCA 2007) ("Under Florida law, the tort of defamation is committed in the place where it is published."); Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So. 2d 716, 719 (Fla. 4th DCA 1998) (holding that the making of defamatory statements to a listener in Florida via telephone constitutes the commission of a tort in Florida within the meaning of section 48.193(1)(b)); cf. PK Computers, Inc. v. Indep. Travel Agencies of Am., Inc., 656 So. 2d 254, 255 (Fla. 4th DCA 1995) (holding that a complaint alleging fraud, tortious interference, and slander failed to meet the requirements of Florida's long-arm statute because it did not state that the allegedly tortious statements were made in Florida or were directed at listeners who were located in Florida).

By comparison, in this case, the cause of action—conversion—arose from the alleged withdrawal of funds from a designated account in a bank in Delaware. Thus, the alleged tort did not occur in Florida; it either occurred in Delaware, or more likely in line with current case law, in Washington State, which is the location where WCC allegedly gained dominion and control over the funds. Ernie Passeos, 855 So. 2d at 109; Merkin, 855 So. 2d at 141. Accordingly, we conclude that the tort alleged did not occur in Florida and had no connexity with this state. Therefore, Tigrent did not satisfy the requirements for personal jurisdiction over Mr. Wiggins under Florida's long-arm statute.

Finally, although a nonresident corporate officer committing fraud or other intentional tort in his individual capacity may be subject to personal jurisdiction in Florida, see Kitroser v. Hurt, 85 So. 3d 1084, 1088 n.3 (Fla. 2012); Doe v. Thompson, 620 So. 2d 1004, 1006 n.1 (Fla. 1993), it is well settled that the acts of a corporate employee performed in a corporate capacity do not form the basis for personal jurisdiction over that employee, Thompson, 620 So. 2d at 1006. See also Kennedy v. Reed, 533 So. 2d 1200, 1202 (Fla. 2d DCA 1988) ("[J]urisdiction will not lie over an individual because of acts performed in his capacity as agent for another."); Bloom v. A.H. Pond Co., 519 F. Supp. 1162, 1170-71 (S.D. Fla. 1981) ("[U]nless the agents transact business on their own account and not on behalf of the corporation, the agents are not engaged in business so as to sustain an application of the long-arm statute to them as individuals.").

Here, Tigrent has not shown that any of Mr. Wiggins' alleged actions were performed in his personal capacity and not in his capacity as a corporate officer on

behalf of WCC. Of course, we express no opinion on Mr. Wiggins' liability for his role—whatever it may have been—in the alleged conversion. We decide only that the circuit court did not have personal jurisdiction over him.

## VI. CONCLUSION

To summarize, Mr. Wiggins did not waive his right to challenge the circuit court's personal jurisdiction over him by waiting to file his motion to vacate until after the circuit court entered a final judgment against him. In addition, the circuit court lacked personal jurisdiction over Mr. Wiggins; thus the judgment against him was void. It follows that the circuit court erred in failing to vacate the final judgment as to Mr. Wiggins and to dismiss the action as to him.

Accordingly, we reverse the order denying the motion to vacate the default final judgment and to dismiss the complaint. On remand, the circuit court shall enter an order vacating the default final judgment as to Mr. Wiggins and dismissing the action as to him. Our decision does not affect the judgment as it relates to WCC.

Reversed and remanded.


SILBERMAN and BLACK, JJ., Concur.