NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STONEPEAK PARTNERS, LP, )
 )
        Appellant, )
 )
v. )      Case No. 2D16-4204
 )
TALL TOWER CAPITAL, LLC, )
 )
        Appellee. )
_____)

Opinion filed August 11, 2017.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Polk County;
Andrea Teves Smith, Judge.

Christine Marlewski (withdrew after briefing)
and Brian K. Oblow (substituted as counsel
of record) of Gray Robinson, P.A., Tampa,
and Joseph M. McLaughlin of Simpson,
Thacher & Bartlett, LLP, New York, for
Appellant.

Robert L. Rocke and Raul Valles of Rocke,
McLean & Sbar, P.A., Tampa, for Appellee.


SILBERMAN, Judge.

        Stonepeak Partners, LP, appeals an order denying its motion to dismiss

for lack of personal jurisdiction in this action brought by Tall Tower Capital, LLC, for

breach of contract and breach of fiduciary duty.  Because the trial court erred in

determining that Tall Tower established jurisdiction based upon the grounds that Stonepeak committed a tortious act in Florida and engaged in a business venture in Florida, we reverse and remand for the trial court to dismiss the action.

Stonepeak is an investment firm incorporated under the laws of Delaware with offices and its principal place of business in New York. Stonepeak has no office, employees, or clients in Florida. Tall Tower is a Florida firm headquartered in Lakeland, Florida, that manages broadcast towers and communications infrastructure throughout the United States. Tall Tower solicited Stonepeak in New York to invest in broadcast towers that were being offered for sale by CC Media Holdings, Inc. (Clear Channel), a Texas company. Clear Channel planned to sell 472 broadcast towers, and 436 of those towers were located outside Florida.

In January 2014, Stonepeak and Tall Tower entered into a confidentiality and noncircumvention agreement (the Confidentiality Agreement) concerning the Clear Channel transaction. The Confidentiality Agreement did not require Stonepeak "to enter into any business relationship or transaction" or "to deal with" Tall Tower. Tall Tower employees regularly made visits to New York to discuss the Clear Channel transaction, and the parties communicated frequently by email. Stonepeak employees or its agents made four visits to Florida regarding the Clear Channel transaction. Tall Tower and Stonepeak negotiated with Clear Channel for almost a year, but their bid was unsuccessful.

During the course of the negotiations, Stonepeak made an equity investment in Vertical Bridge Holding, LLC, a Florida company, and acquired a seventeen percent interest in Vertical Bridge. As a managing director of Stonepeak,

- 2 -

Trent Vichie serves on boards of directors of "portfolio companies" in which Stonepeak has an ownership interest. Vichie served on Vertical Bridge's board of directors as a representative of Stonepeak. Vertical Bridge had the successful bid in the Clear Channel sale.

Tall Tower subsequently filed its complaint, alleging that Stonepeak breached the Confidentiality Agreement and breached its fiduciary duty. Tall Tower alleged that by virtue of the Confidentiality Agreement the parties were "engaged as joint venturers." It further alleged that the fiduciary duty "arose as a result of the [Confidentiality] Agreement and the parties' joint negotiations with Clear Channel."

Stonepeak filed a motion to dismiss for lack of personal jurisdiction and submitted affidavits from Stonepeak's Trent Vichie and Luke Taylor in support. Tall Tower opposed the motion and filed a supporting affidavit from Robert Harper, a managing member of Tall Tower. The trial court determined that the affidavits were in factual conflict and that a limited evidentiary hearing was required. See Canale v. Rubin, 20 So. 3d 463, 469 (Fla. 2d DCA 2009). After an evidentiary hearing, the trial court entered an order denying the motion to dismiss. Stonepeak contends that the trial court erred in determining that Stonepeak is subject to personal jurisdiction in Florida based on section 48.193(1)(a)(2), Florida Statutes (2013), for committing a tortious act in Florida and on section 48.193(1)(a)(1) for engaging in a business venture in Florida.

**Section 48.193(1)(a)(2)—Committing a Tortious Act in Florida**

Personal jurisdiction under Florida's long-arm statute may be general or specific, depending on the nature of the defendant's contacts with Florida. Wiggins v. Tigrent, Inc., 147 So. 3d 76, 85 (Fla. 2d DCA 2014). Section 48.193(1)(a)(2) of Florida's

long-arm statute applies to a lawsuit "arising from" a person "[c]ommitting a tortious act within this state." Such a lawsuit is based on specific jurisdiction. See Wiggins, 147 So. 3d at 86. Tall Tower alleged that Stonepeak committed a tortious act in Florida by breaching its fiduciary duty to Tall Tower.

At an evidentiary hearing on personal jurisdiction, the evidence must establish jurisdiction by a preponderance of the evidence. See Passy v. Lewis, 553 So. 2d 223, 224 (Fla. 1st DCA 1989). We typically conduct a de novo review of an order on a motion to dismiss for lack of personal jurisdiction. See Rautenberg v. Falz, 193 So. 3d 924, 928 (Fla. 2d DCA 2016); Dev. Corp. of Palm Beach v. WBC Constr., L.L.C., 925 So. 2d 1156, 1160 (Fla. 4th DCA 2006). But when the trial court relies on witness testimony, we defer to the trial court's determination of witness credibility. Dev. Corp., 925 So. 2d at 1160. We then apply the facts to the law based on de novo review. Id.

In Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989), the Florida Supreme Court set forth the two-step analysis necessary to determine whether the trial court has personal jurisdiction over a nonresident defendant. See Rautenberg, 193 So. 3d at 928. The trial court must first determine whether the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the long-arm statute. Id. If it does, then the trial court must determine whether sufficient minimum contacts are shown to satisfy due process requirements. Id. Tall Tower alleged acts to establish specific jurisdiction under the long-arm statute of committing a tortious act in Florida and engaging in a business venture in Florida. See § 48.193(1)(a)(1), (1)(a)(2). Specific jurisdiction also "requires a causal connection between the defendant's activities in Florida and the plaintiff's cause of action, a requirement known as 'connexity.' " Canale,

20 So. 3d at 466 (quoting Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002)). The long-arm statute is to be strictly construed in favor of the nonresident defendant. Navas v. Brand, 130 So. 3d 766, 770 (Fla. 3d DCA 2014).

Because the tort alleged is breach of a fiduciary duty, Stonepeak must be shown to owe a fiduciary duty to Tall Tower. A fiduciary relationship does not exist in an arms' length transaction. Mac-Gray Servs., Inc. v. DeGeorge, 913 So. 2d 630, 633 (Fla. 4th DCA 2005); Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp., 850 So. 2d 536, 541 (Fla. 5th DCA 2003). But joint venturers owe each other a duty of loyalty, breach of which gives rise to a claim for breach of fiduciary duty. See New Vista Dev. Corp. v. Doral Terrace Assocs., 878 So. 2d 462, 464 (Fla. 3d DCA 2004).

The joint venture relationship must arise from a contract. Jackson-Shaw Co. v. Jacksonville Aviation Auth., 8 So. 3d 1076, 1089 (Fla. 2008). To establish a joint venture, the contract must contain the following five elements: "(1) a community of interest in the performance of the common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained." Id. (quoting Kislak v. Kreedian, 95 So. 2d 510, 515 (Fla. 1957)). If one element is absent it precludes the finding of a joint venture. Id. A party asserting that an unwritten, implied contract is the basis of a joint venture—as Tall Tower appears to argue on appeal—faces a "heavy and difficult" burden as it still must allege and prove that the implied contract contains the same five elements of a joint venture. Kislak, 95 So. 2d at 515. As the Florida Supreme Court noted, "[b]usiness relationships are not customarily entered into in a casual manner[,]" particularly business relationships of significant magnitude. Id.

- 5 -

Tall Tower contends that it is not necessary to prove the elements of a joint venture because "the appropriate inquiry is whether the tort as alleged in the complaint occurred in Florida, and not whether the alleged tort actually occurred." Navas, 130 So. 3d at 770. In Navas, the defendants did not provide affidavits to contest jurisdiction, and the trial court did not conduct an evidentiary hearing. See id. We recognize that "a full-blown trial" to prove that Stonepeak committed the tort is not required. Acquadro v. Bergeron, 851 So. 2d 665, 669 (Fla. 2003). But "[i]n analyzing whether tortious conduct has occurred within Florida, courts have looked to whether the nonresident defendant 'committed a substantial aspect of the alleged tort in Florida.' " NHB Advisors, Inc. v. Czyzyk, 95 So. 3d 444, 448 (Fla. 4th DCA 2012) (quoting Watts v. Haun, 393 So. 2d 54, 56 (Fla. 2d DCA 1981)).

Here, the trial court did not appear to find that a joint venture existed based on any written contract. The trial court noted casual references in emails to a "JV," statements that Stonepeak was acting in partnership with Tall Tower, and that according to Tall Tower the parties discussed creating a partnership. The trial court "conclude[d] that Stonepeak's investment and participation in Vertical Bridge's successful attempt to acquire the Clear Channel assets (some of which are located in Florida) as alleged in the Complaint and as testified to at the evidentiary hearing may constitute the commission of a tortious act in Florida."

It is telling that while the complaint relied upon the Confidentiality Agreement and the parties' joint negotiations with Clear Channel to establish the fiduciary duty, in its appellate brief Tall Tower recognizes that the Confidentiality Agreement is not a source of any fiduciary duty. Instead, it contends that "the duty

arises from the parties' relationship as joint venturers." After thoroughly reviewing the evidence presented at the hearing and on which the trial court relied, we conclude that the evidence does not establish that Stonepeak owed Tall Tower a fiduciary duty pursuant to a joint venture.

The evidence does not show that any written agreement creating a joint venture had been executed by the parties. Robert Harper of Tall Tower testified that his understanding was that the parties were entering into a partnership. Brian Philpot of Tall Tower testified that he understood the proposed LLC as setting up a joint venture partnership and that Tall Tower would be contributing money and investing in the new entity. On cross-examination, Philpot recognized that the LLC agreement that Stonepeak drafted provided in paragraph 2.7, entitled "No State Law Partnership," that except for tax purposes, the agreement would not be construed to create a joint venture or partnership. Philpot also admitted that a draft Master Services Agreement provided that it shall not be construed as creating any joint venture or partnership.

The evidence shows that Stonepeak drafted an LLC agreement and a Master Services Agreement, but the parties never executed either of them. Although the witnesses from Tall Tower believed they were acting as partners or joint venturers with Stonepeak and would enter into such a written agreement in the future, the facts the trial court relied upon are insufficient to show that any implied contract existed that would meet the five Kislak elements. See Kislak, 95 So. 2d at 515. Indeed, the evidence did not address several of the Kislak factors. Without evidence establishing that a joint venture was actually entered into, Stonepeak had no fiduciary duty to Tall Tower and thus could not breach a fiduciary duty in Florida.

- 7 -

Even if the evidence presented at the hearing could be considered sufficient to show that Stonepeak had a fiduciary duty to Tall Tower, the evidence does not show that Stonepeak breached any fiduciary duty in Florida. The trial court found that Stonepeak was subject to "personal jurisdiction based on Tall Towers' claim that Stonepeak committed a tortious act in Florida through its investment in, and actions on behalf of, Vertical Bridge, as well as its alleged disclosure of confidential information to Vertical Bridge."

With respect to the disclosure of confidential information to Vertical Bridge in violation of the Confidentiality Agreement, the testimony from Tall Tower witnesses provided some circumstantial evidence that Vichie disclosed information about the Clear Channel deal to Marc Ganzi of Vertical Bridge. But there was no evidence regarding where this disclosure occurred. This court has recognized "the general rule that the existence of an injury within Florida, standing alone, is insufficient to support jurisdiction over an out-of-state tortfeasor." Kountze v. Kountze, 996 So. 2d 246, 252 (Fla. 2d DCA 2008) (en banc); see also Homeway Furniture Co. of Mount Airy, Inc. v. Horne, 822 So. 2d 533, 538-39 (Fla. 2d DCA 2002). In the present case, the trial court relied upon Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002), for the proposition that a defendant need not be present in Florida for the purpose of committing a tortious act in Florida under the long-arm statute. A nonresident defendant can commit a tortious act in Florida under the long-arm statute by making written, telephonic, or electronic communications into Florida, if the cause of action alleged arises from those communications. Id.

This court has explained that the Wendt rule is applied when the tort "involves some sort of communication directed into Florida for purpose of fraud, slander, or other intentional tort." Wiggins v. Tigrent, Inc., 147 So. 3d 76, 86 (Fla. 2d DCA 2014); see also PK Comput., Inc. v. Indep. Travel Agencies of Am., Inc., 656 So. 2d 254, 255 (Fla. 4th DCA 1995) (stating that the complaint contained insufficient allegations of tortious interference committed in Florida when the complaint alleged that the defendant made oral statements or misstatements but did not allege that the statements were made in Florida or were directed at listeners in Florida). In Wiggins, the plaintiff asserted a cause of action for conversion, claiming injury in Florida when Wiggins withheld and utilized money that should have been transferred into the plaintiff's Florida bank accounts. 147 So. 3d at 78-79. But the alleged tort of conversion did not occur in Florida and there was no connexity with Florida when the defendant gained dominion and control of the funds in Washington State. Id. at 87.

Because there was no allegation or evidence at the hearing that Vichie's alleged disclosure of information occurred in Florida or was directed at a person in Florida, the alleged disclosure of information to Vertical Bridge does not support the finding that Stonepeak committed a tortious act in Florida. See Wendt, 822 So. 2d at 1260; Wiggins, 147 So. 3d at 86. Similarly, the circumstantial evidence adduced at the hearing does not show that Stonepeak did anything in Florida regarding its alleged "participation in Vertical Bridge's successful attempt to acquire the Clear Channel assets." With respect to Stonepeak becoming a minority investor in Vertical Bridge,

nothing indicates that it was a tort for Stonepeak, an investment firm, to purchase a seventeen percent share of Vertical Bridge.[1]

Therefore, the trial court erred in determining that the evidence presented at the hearing establishes that Stonepeak committed a tortious act in Florida under section 48.193(1)(a)(2).

**Section 48.193(1)(a)(1)—Engaging in a Business Venture in Florida**

Stonepeak contends that the trial court erred in determining that Stonepeak is subject to personal jurisdiction in Florida based on section 48.193(1)(a)(1). Tall Tower alleged in its complaint that Stonepeak was engaged in a business venture in Florida. Section 48.193(1)(a)(1) provides for personal jurisdiction for a cause of action "arising from" the acts of a nonresident in "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." In its findings the trial court stated, "The Court finds that there is competent substantial evidence that Stonepeak engaged in a business venture in Florida. Stonepeak purposefully availed itself of the privilege of conducting activities in Florida, and thus, accordingly invoked the benefits and protections of its laws."

For purposes of section 48.193(1)(a)(1), to demonstrate that a nonresident defendant is "carrying on business" the defendant's activities "must be considered collectively and show a general course of business activity in the state for pecuniary benefit." RMS Titanic, Inc. v. Kingsmen Creatives, Ltd., 579 Fed. App'x 779, 783 (11th Cir. 2014) (quoting Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1167 (11th Cir. 2005)). Factors to consider in making this determination "include:

---

[1]The evidence also does not show that Stonepeak was prohibited by any agreement from investing in another company such as Vertical Bridge.

(1) 'the presence and operation of an office in Florida'; (2) 'the possession and maintenance of a license to do business in Florida'; (3) 'the number of Florida clients served'; and (4) 'the percentage of overall revenue gleaned from Florida clients.' " Id. at 784 (quoting Horizon Aggressive Growth, 421 F.3d at 1167).

Tall Tower points to the large amount of email exchanges and telephone calls over the negotiation period between Tall Tower and Stonepeak. Harper testified that he exchanged numerous emails with Stonepeak regarding the Clear Channel transaction, and Taylor testified that there had been regular telephone discussions. Electronic communications from out-of-state offices into Florida do not establish conducting business in Florida. See Horizon Aggressive Growth, 421 F.3d at 1167; Bernardele v. Bonorino, 608 F. Supp. 2d 1313, 1322 (S.D. Fla. 2009); see also Jasper v. Zara, 595 So. 2d 1075, 1075 (Fla. 2d DCA 1992) (involving communications by mail and telephone).

But we note that in Canale, 20 So. 3d at 468-69, this court distinguished the Florida Supreme Court's decision in Wendt that electronic communications into Florida could constitute a tort. In doing so, this court recognized that to meet the connexity requirement, the alleged tort must arise from the communications on which the plaintiff seeks to establish long-arm jurisdiction. Id. at 469. This court then stated, "Certainly, telephone calls made to Florida may be relevant to whether an out-of-state resident is doing business in this state. But in order to come to this conclusion, the nature of the calls must be examined." Id. Here, the trial court found only that the communications concerned the Clear Channel transaction, a transaction that was never consummated. There was no evidence that Stonepeak derived pecuniary gain as a

result of the communications, and it did not purchase the Clear Channel assets or even enter into an agreement to purchase them.

The trial court also relied on the fact that Stonepeak made an equity investment in Vertical Bridge for a seventeen percent interest in the Florida company and that Vichie sat on the board of directors of Vertical Bridge. The fact that a New York investment firm owns a minority equity interest in a Florida company as part of its portfolio does not equate with Stonepeak doing business in Florida. See Res. Healthcare of Am., Inc. v. McKinney, 940 So. 2d 1139, 1143 (Fla. 2d DCA 2006) ("Ownership of a resident subsidiary corporation by an out-of-state parent corporation, without more, has been repeatedly deemed insufficient to meet the requirements of section 48.193."); Greystone Tribeca Acquisition L.L.C. v. Ronstrom, 863 So. 2d 473, 476 (Fla. 2d DCA 2004). And the activities of Vertical Bridge and its board of directors cannot be attributed to Stonepeak when Tall Tower has made no effort to pierce the corporate veil or establish jurisdiction under an alter ego theory. See Bellairs v. Mohrmann, 716 So. 2d 320, 323 (Fla. 2d DCA 1998); WH Smith, PLC v. Benages & Assocs., 51 So. 3d 577, 581 (Fla. 3d DCA 2010). To demonstrate jurisdiction under an alter ego theory, the plaintiff must make sufficient jurisdictional allegations to pierce the corporate veil. WH Smith, 51 So. 3d at 581. To pierce the corporate veil the plaintiff must establish "*both* that the corporation is a 'mere instrumentality' or alter ego of the defendant[] *and* that the defendant engaged in 'improper conduct' in the formation or use of the corporation." Bellairs, 716 So. 2d at 323 (quoting Dania Jai-Alai Palace, Inc. v. Sykes, 450 So. 2d 1114, 1120-21 (Fla. 1984)). Tall Tower made no allegation that Vertical Bridge was a mere instrumentality of its minority investor, Stonepeak.

- 12 -

Tall Tower is correct that a single transaction for profit can constitute engaging in a business venture. See Labbee v. Harrington, 913 So. 2d 679, 683 (Fla. 3d DCA 2005). Labbee dealt with another long-arm statute, section 48.181, Florida Statutes (2003), that also applies to "nonresidents who engage in or carry on a business or business venture in the state." Labbee, 913 So. 2d at 682. The Third District determined that the allegation that the defendant had rented out real property in Florida for twenty years and then sold it was sufficient to describe a business venture. Id. at 683; see also Wm. E. Strasser Constr. Corp. v. Linn, 97 So. 2d 458, 460 (Fla. 1957) (determining that by the purchase of real property in Florida and the execution of a contract to construct an apartment building that would be rented to tenants for income for the benefit of the defendants, the defendants "were initiating the first sub[s]tantial steps toward setting themselves up in a business venture in this state"); State ex rel. Weber v. Register, 67 So. 2d 619, 620 (Fla. 1953) (determining that the purchase of a citrus grove in Florida and subsequent listing of grove for sale constituted a business venture). The intent of the long-arm statute is "to regard nonresidents who have availed themselves of the privilege of 'dealing in goods, services, or property, whether in a professional or nonprofessional capacity, within the State in anticipation of economic gain,' as operating a business or business venture." Labbee, 913 So. 2d at 683 (quoting DeVaney v. Rumsch, 228 So. 2d 904, 907 (Fla. 1969)).

Here, in addition to telephone calls and emails, the trial court found that over the course of approximately ten months Stonepeak had the following contacts in Florida: (1) three Stonepeak employees attended an introductory meeting and dinner in Florida with Tall Tower in January 2014; (2) an accountant acting as an agent for

Stonepeak visited Tall Tower sometime not long after the January meeting and in October 2014 to audit Tall Tower's financial records in relation to the potential Clear Channel transaction; and (3) a Stonepeak employee visited a Miami site of a Tall Tower broadcast tower in April 2014 to continue negotiations regarding the Clear Channel transaction.

Stonepeak never consummated a transaction to purchase the Clear Channel assets or even entered into a contract for purchase. Stonepeak did not enter into any LLC or management agreement with Tall Tower. Stonepeak did not deal in any property in Florida but investigated the possibility of entering into such a transaction. Stonepeak owned no real property in Florida. The trial court seemed to rely on the fact that a small percentage of the broadcast towers were located in Florida, but Clear Channel owned these towers, not Stonepeak.

The Confidentiality Agreement that Stonepeak signed in New York did not obligate it to do anything in Florida. And Tall Tower originally solicited Stonepeak in New York regarding the Clear Channel transaction that was for the purchase of 472 broadcast towers across the nation, although only 36 of the towers were located in Florida. Stonepeak has no office in Florida and no license to do business in Florida. Tall Tower failed to show that Stonepeak has any clients in Florida or that any percentage of its revenue is from Florida clients.

In applying the facts that the trial court found to the law, we conclude that the trial court erred in finding that section 48.193(1)(a)(1) was satisfied based on "competent substantial evidence that Stonepeak engaged in a business venture in Florida." The trial court did not find and the evidence does not support that Stonepeak

- 14 -

dealt in any goods, services, or property in Florida or that Stonepeak's activities in Florida showed a general course of business activity for pecuniary gain.

We also note that the trial court found in a conclusory sentence that there was "a sufficient connection between Stonepeak's Florida activities and the causes of action alleged by Tall Tower to satisfy the connexity requirement." But the order does not explain how Stonepeak's conduct, including the meetings or communications with Tall Tower, could be the basis for the claim that Stonepeak disclosed confidential information to a third party and assisted that party in purchasing the Clear Channel assets. See Canale, 20 So. 3d at 466 (stating that for specific jurisdiction there must be "a causal connection between the defendant's activities in Florida and the plaintiff's cause of action" (quoting Wendt, 822 So. 2d at 1260)).

Therefore, the trial court erred in determining that the evidence established that Stonepeak engaged in a business venture in Florida under section 48.193(1)(a)(1).

**Conclusion**

Because Tall Tower did not establish either ground under section 48.193(1)(a)(1) or (1)(a)(2) asserted for personal jurisdiction, we reverse the order denying the motion to dismiss for lack of personal jurisdiction and remand for the trial court to dismiss the case. Based on our conclusion that Tall Tower did not establish a basis for personal jurisdiction under section 48.193, we do not reach the issue of sufficient minimum contacts with Florida. See Rautenberg, 193 So. 3d at 930; Casita, L.P. v. Maplewood Equity Partners L.P., 960 So. 2d 854, 858 (Fla. 3d DCA 2007).

Reversed and remanded for dismissal.

MORRIS and BLACK, JJ., Concur.